James R. Dole, OSB No. 892272
JDole@WLRlaw.com
Watkinson Laird Rubenstein, P.C.
PO Box 10567
Eugene, OR 97440
jdole@wlrlaw.com
(541)-848-2277

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| | | |
|---|---|---|
| GEORGE E. BACKES, and<br>RICK BARCLAY<br><br>Plaintiffs,<br><br>v.<br><br>DAVID BERNHARDT,<br>Acting Secretary of Interior;<br>JOHN DOE, Deputy Secretary<br>Of Interior; and the UNITED STATES<br>BUREAU OF LAND MANAGEMENT,<br>An agency of the United States,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. _____<br><br>**COMPLAINT** |

INTRODUCTION

1.      Plaintiffs challenge the determination of the United States Department of the Interior, Interior Board of Land Appeal (IBLA), affirming two Bureau of Land Management ( BLM) decisions finding Plaintiffs failed to comply with the BLM's surface management and occupancy regulations found in 43 C.F.R. §§ 3809 and 3715. Plaintiffs assert that §§ 3809 and 3715 do not apply to their unpatented mining claims located before enactment of the Surface Resources Act

of 1955 in a manner such that would deprive them of their rights. The findings and conclusions of IBLA are not in accordance with law, confer excess statutory authority, are unsupported by the evidence contained in the agency record, and are unwarranted by the facts. The IBLA erred in failing to decide the surface rights of the Plaintiffs. In addition, the BLM failed to establish that the Notices of Non Compliance were duly issued by an individual with authority to sign the same.

2. Plaintiffs seek judicial review, reversal of the decision, of the IBLA decision and a declaration that the Notices of Non Compliance are void.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this court under 28 U.S.C. §1331 because this action arises under the laws of the United States and their implementing regulations including The Mining Law of 1872, 30 U.S.C. §§ 22-42; the Surface Resources Act of 1955, 30 U.S.C. §§ 601 *et seq.*, (SRA); FLPMA, 43 U.S.C. §§ 1701 *et seq.*; the APA, 5 U.S.C. §§ 701 *et seq.*; the Declaratory Judgement Act, 28 U.S.C. §§ 2201 *et seq.*; and the Equal Access to Justice Act, 28 U.S.C. . §§ 2412 *et seq.*

4. An actual justiciable controversy now exists between Plaintiffs and Defendants. The challenged decision is final and subject to judicial review pursuant to 5 U.S.C. §§702, 704, & 706. The relief requested is proper under 28 U.S.C. §§ 2201& 2202 and 5 U.S.C. §§701-706.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(e) because Plaintiffs reside in this district; Defendant BLM has offices and staff in Oregon; and the mining claims relevant to claims asserted herein are located in this district.

///

///

6.     The federal government has waived sovereign immunity under 5 U.S.C. §701.

## PARTIES

7.     Plaintiff George E. Backes is an individual residing in Josephine County, Oregon and joint owner of the mining claims discussed below.

8.     Plaintiff Rick Barclay is an individual residing in Jackson County, Oregon and joint owner of the mining claims discussed below.

9.     Defendants in this action are as follows:

    A.     David Bernhardt is the Acting Secretary of the Interior, and has responsibility for approving the decision of the IBLA. He is sued solely in his official capacity.

    B.     As of filing this Complaint, Plaintiffs are unable to identify the Deputy Secretary of the Interior since David Bernhardt was promoted to Acting Secretary of the Interior. The Department of the Interior's website is currently not up to date. As such, Plaintiffs name John Doe, Deputy Secretary of the Interior, who has responsibility for or approving the decision of the IBLA. The Deputy Secretary of the Interior is sued solely in his official capacity.

    C.     Bureau of Land Management is an agency of the United States, within the Department of the Interior. BLM is charged with statutory duties to manage public lands under its jurisdiction pursuant to FLPMA and other authorities. The BLM is the agency responsible for issuing the underlying decisions challenged herein.

## STATEMENT OF RELEVANT FACTS

10.    Plaintiffs are the joint owners of six unpatented mining claims.

11.    The claims are in Josephine County, Oregon, along Quartz Creek, a tributary of the North Fork of Galice Creek, which flows into the Rogue River, outside the community of Galice. The claims are identified as follows:

| Claim | ORMC | Date of Location |
|---|---|---|
| Sugar Pine | 20078 | February 15, 1876[1] |
| Sugar Pine South Extension | 20079 | March 27, 1975 |
| Black Jack | 20080 | July 17, 1900 |
| Black Jack #3 | 20081 | August 21, 1900 |
| Oregonian | 20082 | January 1, 1908 |
| Golden Cycle | 20083 | November 23, 1920 |

12. All of the claims are in Sections 3 and 4 of Township 35 South, Range 8 West, Willamette Meridian, and a small portion of Section 33 of Township 34 South, Range 8 West.

13. It is undisputed that each of the claims has been continuously located.

14. All of the claims predate the Surface Resources Act of 1955, 30 U.S.C. §§ 601 *et seq.* (also referred to as the Multiple Use Act) (SRA), with the exception of the Sugar Pine South Extension. The surface rights related to the pre 1955 claims have never been severed from the underlying claims.

15. All improvements and equipment on the claims are reasonable and necessary for mining purposes in order to make the mining claims productive. Plaintiffs have begun restoring access roads, tunnels, and other workings, and have assembled equipment necessary for mining. In light of the claims' remote location, they built a small cabin for use during active mining.

16. The BLM was aware of the activities and occupancy of the claims. Its agents had directly observed the activities at various times. See IBLA Opinion 193 IBLA 215 B. A copy of the opinion is attached as Exhibit 1.

///

///

---

[1] Plaintiffs believe that the Sugar Pine Lode may in fact pre date February 15, 1876 based on a conveyance from Thomas Mitchell to George Green for the claim and some improvements dated prior to February 15, 1876, as may be established at trial.

17. On or about March 18, 2015 Plaintiffs received two Noncompliance Notices issued by the BLM finding that Plaintiffs were illegally operating and occupying their claims because of their failure to comply with the BLM's surface management and occupancy regulations found in 43 C.F.R. 3809 & 3715. Copies of the BLM decisions are attached hereto as Exhibit 2 (Notices).

18. The Notices are signed by an individual whose signature appears to be that of Jim Bell. See Exhibit 2.

19. Prior to receipt of the Notices, Plaintiffs had been in contact with representatives of the BLM for mining-related purposes. *See* Exhibit 3 Affidavit of Rick Barclay dated April 23, 2015, attached to Appellants Statement of Reason (Barclay Affidavit). The BLM acknowledges that during the course of these communications it was understood that Plaintiffs asserted, consistent with their dates of location, that their rights in the claims included the surface estate. *Id.* The BLM had never challenged Plaintiffs' understanding.

20. The Notice of Noncompliance pursuant to 43 CFR §3715 states that the BLM observed two camp trailers, a watchman, a no trespassing sign claiming exclusive surface rights, a cabin, milling facility, several small crushers, a small ball mill, a small saw mill, and other equipment. The Notice states that surface rights do not exist.

21. The Notice of Noncompliance pursuant to 43 CFR §3809 states that the BLM observed a small bull dozer and mini–excavator which was used to install a water pipe system, improve roads, clear adit entrances, and level areas. Once again the BLM Notice states that pre-1955 surface rights do not exist.

22. On or about April 23, 2015 the Plaintiffs filed a motion to stay the Notices pending appeal and filed a Notice of Appeal to the Interior Board of Land Appeals for each of the decisions. The BLM subsequently filed a Non-Opposition to Stay dated May 1, 2015.

23. Subsequently Plaintiffs filed their Appellants Statement of Reason arguing that their mining claims have valid surface rights which allow the Plaintiffs the exclusive right to occupy the mining claims for reasons incidental to mining. A copy of the Appellants Statement of Reason is attached hereto as Exhibit 4.

24. The documents submitted by Plaintiffs to the IBLA establish the chain of title relevant to the ownership claim. See Exhibit 4 and Exhibits thereto.

25. On or about September 8, 2015 the BLM filed an Answer drawing into question Plaintiff's surface rights.

26. On or about October 8, 2015 Plaintiffs filed a reply to the Answer of the BLM and requested and evidentiary hearing. Plaintiffs argued that their appeal turned on whether their mining claims have the benefit of surface rights because of their location prior to 1955. Plaintiffs Reply is attached hereto as Exhibit 5.

27. During the course of events Plaintiff's submitted one or more Freedom of Information Act (FOIA) requests in an attempt to determine who had signed the BLM Notices on behalf of the agency. The signatures appear to be a person named Jim Bell "acting for" Field Manager Allen Bollschweiger. The response to the FOIA is attached hereto as Exhibit 6. The agency has yet to verify who it was that signed the Decisions or establish that the individual had authority to do so. The documents provided in response to the FOIA request establish that there was not an individual with delegated authority during the time period when the Notices were issued. ON information and belief, no person named "Jim Bell" or anything similar to that was employed by the agency and who placed his signature on the Notices.

///

28. On October 29, 2018 IBLA issued its opinion, 193 IBLA 208, affirming the BLM's determination that Plaintiffs failed to comply with the BLM's surface and occupancy regulations found at 43 C.F.R.§ § 3809 and 3715 and were therefore illegally operating and occupying their claims. See Exhibit 1.

29. The IBLA held that mining claimants and operators of unpatented mining claims must comply with the regulations found in 43 C.F.R.§ § 3809 and 3715 "regardless of when those claims were located or the applicability of the Surface Resources Act to the claims".  The IBLA reasoned that *only* through compliance with these regulations can the BLM determine if activities are incident to mining.

30. Plaintiffs in their Statement of Reason argued to the IBLA that the administrative record did not support the notices/decisions because the BLM failed to comply with section 4 of the SRA (Multiple Use Act) as necessary to sever surface rights.

### I.     The IBLA erred in failing to address the relationship of surface rights to the FLPMA,  CFR Sections 3809 & 3715 in the  context of the SRA

31. The FLPMA expressly states that the Act may not impair the rights of claims.

> Except as provided in section 1744, section 1782, and subsection (f) of section 1781 of this title and in the last sentence of this paragraph, no provision of this section or any other section of this Act shall in any way amend the Mining Law of 1872 or impair the rights of any locators or claims under that Act, including, but not limited to, rights of ingress and egress. In managing the public lands the Secretary shall, by regulation or otherwise, take any action necessary to prevent unnecessary or undue degradation of the lands.

Section 302(b) FLPMA, 43 USC §1732(b). Any regulatory action must therefore be done in a manner that does not cause interference with those rights. The surface rights held by Plaintiffs are relevant to the determination.

32. It is well-settled law "that when a mining claim has been perfected . . ., it is in effect a grant from the United States of the exclusive right of possession to the same." *United States v.*

*Etcheverry*, 230 F.2d 193, 195 (10th Cir. 1956). The grant "constitutes property to its fullest extent, and is real property subject to be sold, transferred, mortgaged, taxed, and inherited without infringing any right or title of the United States." *Id.* Under the General Mining Act of 1872, "[a] mining claim perfected under the law is property in the highest sense of that term, which may be bought, sold, and conveyed, and will pass by descent." *Belk v. Meagher*, 104 U.S. 279, 283, 26 L. Ed. 735 (1881). The nature of the grant "is in the nature of an estate in fee." *Stenfjeld v. Espe*, 171 F. 825, 828 (9th Cir. 1909).

33. Based on surface rights, owners have the right to possess the property and a right to exclude others from the property. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435, 102 S. Ct. 3164, 3176, 73 L. Ed. 2d 868 (1982). The surface rights granted under a perfected mining claim include the right to exclusive possession. 30 USC 26; *Belk v. Meagher*, 104 U.S. 279, 283, 26 L. Ed. 735 (1881). Moreover, the surface rights include a right to cut and sell timber in the most profitable way, as long as the cutting of the timber is in furtherance of the mining operation. *United States v. Nelson*, 27 F. Cas. 86, 88 (D. Or. 1878); *See United States v. Rizzinelli*, 182 F. 675, 684 (D. Idaho 1910). The exclusive right of possession encompasses the right to "possession of every appurtenant belonging to the realty, including timber, soil, country rock, percolating waters, [and] natural springs." *McKenzie v. Moore*, 176 P. 568, 568 (Ariz. 1918). Thus, the surface rights that accompany a perfected mining claim are not limited to mining, but also include those rights in fee in furtherance of mining. *Talbott v. King*, 6 Mont. 76, 9 P. 434, 437–38 (1886), *aff'd sub nom. Talbott v. Bd. of Comm'rs of Silver Bow Cty.*, 139 U.S. 438, 11 S. Ct. 594, 35 L. Ed. 210 (1891).

34. The purpose and scope of 34 USC § 3715 (FPMLA) is as follows:

> The purpose of this subpart is to manage the use and occupancy of the public lands for the development of locatable mineral deposits by limiting such use or

occupancy to that which is reasonably incident. The Bureau of Land Management (BLM) will prevent abuse of the public *lands while recognizing valid rights and uses under the Mining Law of 1872 (*30 U.S.C.22 et seq.) and related laws governing the public lands, regardless of when those rights were created. (emphasis added).

35. The IBLA Acknowledges that the SRA is prospective, applying to future claims and that Congress specifically provided claims located prior to enactment of the SRA retained their pre-existing surface rights, and those rights were not subject to the SRA section 4 limitations on claims unless they were made subject to the SRA through the procedural processes in sections 5 and 6 of the act. 193 IBLA at 211.

36. Nonetheless, the IBLA concluded that the dispute over surface rights was not relevant and did not decide if the surface rights were retained. 193 IBLA at 217.

37. The occupancy of a pre-1955 mining claim for legitimate mining purposes cannot, as a matter of law, constitute "unnecessary and undue degradation of the lands". "Unnecessary or undue degradation" means those activities that are "not reasonably incident to mining and are not authorized under other applicable law or regulation." See 43 USC §1732(b); *Combined Metals Reduction Co.*, 170 IBLA 56 (2006). Since the IBLA chose to ignore the surface rights analysis, the opinion and record are void of discussion or analysis of how Plaintiffs' activities result in unnecessary or undue degradation.

38. All of the activities and items observed as described in the Notices come squarely within activities that are incident to mining and therefor do not constitute undue degradation of the lands.

///

///

///

## II. Signature on Notices

39. Section 3809 does not clearly define who may issue notices of noncompliance. Generally, 43 CFR §3809.601 states that "BLM may issue . . . a noncompliance order" if operations do not comply with the "notice, plan of operations, or requirement of this subpart."

40. The BLM delegates authority among its agents via the internal BLM Manual.  BLM Manual Rel. 1-1706, Appendix 1 indicates that authority under 43 CFR §3809 lies with the State Directors and the District Managers.  Field Managers' authority should be identified in the State's supplement to the Manual.  Any third party under the Field Manager must be delegated authority to act on behalf of a Field Manager when issuing orders of noncompliance.

41. The Manual distinguishes between authority and responsibility: "Authority to make a decision or take an action is different from having responsibility. For example, the ability to sign a grazing permit . . . is an authority that can be delegated. The daily administration of procedures related to the grazing program is an assigned responsibility." BLM Manual Rel. 1-1706 Glossary D.  Issuing an order of noncompliance is clearly a decision-making action; it therefore falls under "authority," not "responsibility."

42. BLM Manual Rel. 1-1706.04(F)(3) directs that "[a]ll BLM Management Officials are responsible for: Re-delegating authorities to the appropriate level of the organization *with full documentation* in the appropriate BLM Manual Sections and Manual Supplements and, if necessary, providing a notice in the Federal Register." (emphasis added).

43. BLM Manual Rel. 1-1706.1.11(B) states that "[a]ny official to whom authority is delegated in BLM Manual Section 1203, or to whom authority has been delegated by other appropriate means, may, *in writing*, re-delegate or authorize re-delegation of such authority, unless re-delegation of authority is specifically prohibited or is limited." (emphasis added).

44. Similarly, BLM Manual Rel. 1-1706.2.21 provides:

> Delegations of authority must, *in all instances*, be made by written notice to the position receiving the authority. This is a minimum requirement for all delegations of authority. This written notice must be made on Form 1203-2, Delegation of Authority, signed by the official delegating the authority and sent to the positions receiving the authority, or a similar form used as part of a State Manual Supplement to the BLM Manual Section 1203, such as an Information Bulletin or Instruction Memorandum. (emphasis added).

45. BLM Manual Rel. 1-1706.2.22 further provides that "[w]ritten documentation of a delegation of authority must be in the form of an amendment to the Index to this Manual Section (see Appendix 1), or to the Index of a State Manual Supplement to the BLM Manual Section 1203."

46. No written documentation exists indicating the delegation of authority upon the signatory of the noncompliance orders by the Field Manager. The orders require signature by the Field Manager in the absence of a writing indicating the delegation of authority. On information and belief, no authority was delegated to the person whose signature appears on the Notices and the signatures were placed on the Notices to falsely represent the existence of authority.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Relief – Reversal of IBLA Decision and Voiding of Notices)**

47. Plaintiffs re-allege paragraphs 1- 46 and add as follows.

48. The regulatory overlay of the FLPMA cannot deprive the Plaintiffs of their surface rights or interfere with those surface rights.

49. The IBLA erred in disregarding the surface rights of the Plaintiffs in reaching its determination, and in failing to acknowledge that the FLPMA does not extinguish any possessory rights that an individual may have under the mining laws. As such, the IBLA findings

are not in accordance with law, confer excess statutory authority to the BLM, are unsupported by the evidence contained in the agency record, and are unwarranted by the facts.

50. Accordingly the IBLA decision should be reversed and the Notices as issued should be set aside.

## SECOND CLAIM FOR RELIEF
### (Declaratory Relief - BLM Notices of Noncompliance are invalid based on lack of authorized signature of individual with clear delegated authority.)

51. Plaintiffs re-allege paragraphs 1- 50 and add as follows.

52. The BLM has failed to establish the Notices of Non-compliance were issued by an individual who had the appropriate authority.

53 The Notices of Non-Compliance should be declared void and set aside for lack of issuance with a signature of an individual with delegated authority.

WHEREFORE, Plaintiffs respectfully request the Court grant the following relief:

A. Reversing the IBLA decision and declaring that the findings and conclusions of IBLA are not in accordance with law as set forth in the SRA, confer excess statutory authority to the BLM, are unsupported by the evidence contained in the agency record, and are unwarranted by the facts.

B. Declaring that the Notices of Noncompliance are void for lack of issuance from an individual with delegated authority.

## THIRD CLAIM FOR RELIEF
### (Attorney Fees)

54. Plaintiffs are entitled to attorney fees and costs pursuant to 28 USC §2412.

WHEREFORE, Plaintiffs respectfully request the Court grant the following relief:

A. Reversing the IBLA decision and declaring that the findings and conclusions of IBLA are not in accordance with law as set forth in the SRA, confer excess statutory authority to the BLM,

are unsupported by the evidence contained in the agency record, and are unwarranted by the facts.

B.     Declaring that the Notices of Noncompliance are void for lack of issuance from an individual with delegated authority.

C.     Attorney Fees and costs to be determined by the court.


Dated: April 2, 2019.


/s/ James R. Dole
James R. Dole, OSB No. 892272
Watkinson Laird Rubenstein, P.C.
PO Box 10567
Eugene, OR 97440
Email: jdole@wlrlaw.com
T: 541-848-2277